IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.                                                          NO.  4:23-CR-127-P

CHRISTOPHER KIRCHNER

## GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ Dimitri N. Rocha*
DIMITRI N. ROCHA
Assistant United States Attorney
Florida Bar 693332
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Telephone: 214-659-8650
Facsimile: 214-659-8803
Email:  Dimitri.Rocha@usdoj.gov

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES............................................................................................ iii

I. BACKGROUND ......................................................................................................... 1

II. AUTHORITIES ......................................................................................................... 5

III. ARGUMENT.............................................................................................................5

      A.     Forfeiture is Mandatory.................................................................... 5

      B.     Burden of Proof ................................................................................ 6

      C.     Proceeds ........................................................................................... 7

      D.     Supporting Evidence and Information to be Considered ................... 9

      E.     Forfeiture of Specific Assets ........................................................... 11

      F.     Forfeiture Money Judgment ............................................................ 15

      G.     Forfeiture of Substitute Assets ....................................................... 15

IV. RELIEF ................................................................................................................... 18

V. CONCLUSION.......................................................................................................... 19

CERTIFICATE OF CONFERENCE ............................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Libretti v. United States,* 516 U.S. 29 (1995*)* ......................................................................... 6

*United States v. Adegboye,* No. CR-11-30, 2011 WL 5025531 (W.D. Okla. Oct. 21, 2011) ................................................................................................................................................ 7

*United States v. Betancourt,* 422 F.3d 240 (5th Cir. 2005) .......................................... 8, 13

*United States v. Capoccia,* 503 F.3d 103 (2d Cir. 2007*)* ............................................... 7

*United States v. Chavez,* 947 F.2d 742 (5th Cir. 1991) .................................................... 6

*United States v. Cox,* 851 F.3d 113 (1st Cir. 2017) ......................................................... 9

*United States v. Davis,* 53 F.4th 833 (5th Cir. 2022) ....................................................... 12

*United States v. Evans,* 892 F.3d 692 (5th Cir. 2018) ...................................................... 12

*United States v. Gasanova,* 332 F.3d 297 (5th Cir. 2003) ............................................... 6

*United States v. Hall,* 434 F.3d 42 (1st Cir. 2006) ........................................................... 6

*United States v. Hatfield,* 795 F. Supp. 2d 219 (E.D.N.Y. 2011) ................................... 7

*United States v. Lacerda,* 958 F.3d 196 (3d Cir. 2020) ................................................... 8

*United States v. Lo,* 839 F.3d 777 (9th Cir. 2016) ............................................................ 9

*United States v. Nagin,* 810 F.3d 348 (5th Cir. 2016) ...................................................... 15

*United States v. Olguin,* 643 F.3d 384 (5th Cir. 2011) .................................................. 6, 15

*United States v. Prather,* 456 Fed. Appx. 622 (8th Cir. Jan. 25, 2012) ........................... 15

*United States v. Real Prop. Known as 1700 Duncanville Rd.,* 90 F. Supp. 2d 737 (N.D. Tex. 2000)..................................................................................................................14

*United States v. Reed,* 908 F.3d 102 (5th Cir. 2018)............................................................8

*United States v. Sanders,* 952 F.3d 263 (5th Cir. 2020)...........................................7, 8, 14

*United States v. Schlesinger,* 261 Fed. Appx. 355 (2d Cir. Jan. 30, 2008) ........................4

*United States v. Taylor,* 582 F.3d 558 (5th Cir. 2009) .........................................................6

*United States v. Tencer,* 107 F.3d 1120 (5th Cir. 1997).....................................................14

*United States v. Treacy,* 639 F.3d 32 (2d Cir. 2011)............................................................8

*United States v. Vogel,* No. 4:08-CR224, 2010 WL 547344 (E.D. Tex. Feb. 10, 2010) ... 8, 13

*United States v. Warshak,* 631 F.3d 266 (6th Cir. 2010) .....................................................7

**Statutes**

18 U.S.C. § 1957 .........................................................................................................1, 4, 5

18 U.S.C. § 981(a)(1)(C)......................................................................................4, 5, 12, 13

18 U.S.C. § 982(a)(1) ...........................................................................................4, 5, 13, 14

18 U.S.C. § 1343 ......................................................................................................1, 4, 5, 12

18 U.S.C. § 3661 ....................................................................................................................9

21 U.S.C. § 853 .............................................................................................................5, 17

21 U.S.C. § 853(a) .............................................................................................................6, 16

21 U.S.C. § 853(n)...............................................................................................................18

21 U.S.C. § 853(p).........................................................................................................4, 16

28 U.S.C. § 2461(c) ............................................................................................ 4, 5, 12, 13

## Rules and Other Authorities

Fed. R. Crim. P. 32.2(b) .................................................................................................. 1, 17

Fed. R. Crim. P. 32.2(b)(1)(B) ...............................................................................7, 9, 10, 11

Fed. R. Crim. P. 32.2(b)(2) ..................................................................................................... 1

Fed. R. Crim. P. 32.2(b)(3) ................................................................................................... 17

Fed. R. Crim. P. 32.2(b)(4)(B) ............................................................................................. 17

Fed. R. Crim. P. 32.2(e) ................................................................................................... 6, 17

Fed. R. Crim. P. 32.2(e)(1)(B) ............................................................................................. 15

## GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE

Fed. R. Crim. P. 32.2(b)(2)((B) provides for the Court to enter a preliminary order of forfeiture in advance of sentencing.  Pursuant to Fed. R. Crim. P. 32.2(b), the United States of America (the government) requests entry of a preliminary order of forfeiture, and in support, states:

## I. BACKGROUND

1. On December 19, 2023, the grand jury charged defendant Christopher Kirchner ("Kirchner") by a superseding indictment.  (Dkt. 68).  Kirchner was charged in Counts One through Four with wire fraud, in violation of 18 U.S.C. § 1343.  Kirchner was also charged in Counts Five through Eleven with engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §1957.

2. The superseding indictment notified Kirchner of the government's intent to forfeit property.  (Dkt. 68 at ¶¶ 41-44).  Such properties included:

   a. The proceeds traceable to each of Counts One through Four, as well as the scheme to defraud underlying those Counts, in the form of a "money judgment" in the amount of at least $25,000,000.
   b. The value of the property involved in each of Counts Five through Eleven, in the form of a "money judgment" in the amount of the respective laundering transaction.
   c. 2021 Mercedes Benz AMG G63, VIN W1NYC7HJ9MX401228.
   d. 2022 Rolls Royce Cullinan, VIN SLATV4C05NU211445.
   e. Richard Mille 95% Platinum Watch with Sports Rubber Bracelet, Model RM008/AFPT/27, Serial No. PT950.
   f. Men's Rolex Oyster Cosmograph Dayton Watch, 18K Yellow Gold, Model 116508, Serial No. 124741T1.

g. Ladies' Rolex Oyster Perpetual Date Just Watch in 18K Rose Gold, Model 81285, Serial No. J0560855.

h. Men's Rolex Oyster Perpetual Cosmograph Daytona Watch in 18K White Gold, Model 116509, Serial No. Z071060.

i. Cartier Panther-Style Pendant Necklace in 18K Yellow Gold, seized on February 14, 2023.

j. *Round Monette with Pink Roses* Painting by Sarah Ashley Longshore.

k. 57 bottles of wine (formerly described as Eleven cases of wine, including bottles of wine from the Lokoya winery), seized from defendant Christopher Kirchner's residence on or about February 14, 2023 as follows:
Four (4) bottles of Hundred Acre Ark Wine
Thirty-three (33) bottles of Lokoya 2018 Cabernet Sauvignon
Two (2) bottles of Vineyard 7 and 8 Estate 2018 Cabernet Sauvignon
Eighteen (18) bottles of Lokoya 2016 Cabernet Sauvignon

l. The real property located at 1209 Perdenalas Trail, Westlake, Tarrant County, Texas, a 2.313 acre tract of land situated in the Josiah Walker Survey, Abstract No. 1604, Town of Westlake, Tarrant County, Texas, and being all of Lots 19 and 20, Block L of the Vaquero ~ Arthur Addition, Phase 3 according to the Plat thereof recorded in Instrument No. D203426028 of said Map or Plat Records of Tarrant County, Texas, said 2.313 acre tract of land being more particularly described by metes and bounds as follows:

> BEGINNING at a ½" iron rod found for corner in the South line of Perdenalas Trail (35 foot wide Right-of-Way), at the Northwest corner of said Lot 20, same being the Southwest corner of Lot 21, Block L;
> THENCE South 64°32'49" East with the North line of said Lot 20, same being the south line of Lot 21 a distance of 284.19 feet to ½" iron rod found at the Northeast corner of said Lot 20, same being the Southeast corner of said Lot 21, and being in the West line of Lot 23, Block L;
> THENCE South 00°33'08" East with the West line of said Lot 20, same being the East line of said Lot 23 a distance of 233.51 feet to a point for corner at the Southeast corner of said Lot 20, same being the Southwest corner of said Lot 23, and being in the South line of said Block L of the above referenced Phase 3;
> THENCE South 89°47'42" West with the South line of said Lot 20, Block L at a distance of 172.19 feet passing a point for corner at the Southwest corner of said Lot 20, same being the Southeast corner of said Lot 19 and continuing a total distance of 362.80 feet to a point for corner in the South line of said Block L, and being at the Southwest corner of said Lot 19, same being the Southeast corner of Lot 18, Block L of said Vaquero – Arthur Addition Phase 3;
> THENCE North 00°37'05" West with the common line between said Lots 18 and 19 distance of 243.55 feet to a ½" iron rod found in the

South line of Perdenalas Trail, at the Northwest corner of said Lot 19, same being the Northeast corner of Lot 18, and being at the beginning of a non-tangent curve to the left;

THENCE in a Northeasterly direction with the South line of said Perdenalas Trail, the North line of said Lot 19, and with said curve to the left having a radius of 129.50 feet, whose chord bears North 79°03'05" East, a distance of 2.59 feet, for an arc length of 2.59 feet at the beginning of a reverse curve to the right;

THENCE in a Southeasterly direction with the Said North and South lines and with said reverse curve to the right having a radius of 14.00 feet, whose chord bears South 69°39'36" East, a distance of 14.78 feet, for an arc length of 15.57 feet at the beginning of a reverse curve to the left;

THENCE in a Northeasterly direction continuing with the said South line of Perdenalas with said reverse curve to the left having a radius of 50.00 feet, whose chord bears North 53°11'56" East, a distance of 99.98 feet, at an arc length of 128.85 feet passing a point for corner at the Northeast corner of Lot 19, same being an angle corner in the West line of Lot 20, and continuing with said curve to the left a total length of 155.08 feet to a point for corner at the beginning of a reverse curve to the right;

THENCE in the Northwesterly direction with the common line of Perdenalas Trail and said Lot 20 and with said reverse curve to the right having a radius of 14.00 feet, whose chord bears North 10°06'14" West, a distance of 12.14 feet, for an arc length of 12.56 feet to a point for corner in said common line;

THENCE North 15°35'44" East continuing with said common line a distance of 26.33 feet to ½" iron rod found at the beginning of a curve to the left;

THENCE in the Northeasterly direction with said common line and with said curve to the left having a radius of 367.50 feet, whose chord bears North 13°55'20" East, a distance of 21.47 feet, for an arc length of 21.47 feet;

Back to the POINT OF BEGINNING and CONTAINING 100,740 square feet or 2.313 acres of land, more or less.

m. Approximately $3,508.99 seized from Bank of America Account No. XXXXXXXX3574, in the name of KFIM, LLC.

n. Approximately $500,000.00 of $500,000.82 seized from Bank of America Account No. XXXXXXXX1186, in the name of Alyssa Kirchner.

o. Approximately $39,501.76 seized from Bank of America Account No. XXXXXXXX5469, in the name of Christopher Kirchner and/or Alyssa Kirchner.

p. Approximately $32,292.90 seized from Bank of America Account No. XXXXXXXX5472, in the name of Christopher Kirchner and/or Alyssa Kirchner.

The superseding indictment notified Kirchner that the government seeks forfeiture of the assets under two separate theories.  Under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the government seeks forfeiture for the tainted portions for all of the assets as proceeds derived from a violation of wire fraud, 18 U.S.C. § 1343 (Count One, Two, Three, and/or Four).  (Dkt. 68 at ¶ 41). In addition, under 18 U.S.C. § 982(a)(1), the government seeks forfeiture of asset (c.) (Count Eleven) and asset (l.) (Count Five and/or Count Nine) as property involved in 18 U.S.C. § 1957 money laundering.  *Id.* at ¶ 42.  Kirchner may be ordered to forfeit the same property as proceeds of fraud and as property involved in money laundering since forfeiture is part of the punishment for each offense. *See United States v. Schlesinger*, 261 Fed. App'x 355, 361 (2d Cir. Jan. 30, 2008). The superseding indictment also notified Kirchner that the government seeks a forfeiture money judgment.  (Dkt. 68 at ¶ 41a.-b.).

3.      In addition, the government also notified Kirchner that property may be subject to forfeiture as substitute assets, pursuant to 21 U.S.C. § 853(p).  (Dkt. 68 at ¶ 44).

4.      On January 25, 2024, a jury found Kirchner was guilty of on all charged counts – Counts One through Four (wire fraud) and Counts Five through Eleven (money laundering).  (Dkt. 103).

## II. AUTHORITIES

5.      The Court's jurisdiction and legal authority is based on 21 U.S.C. § 853, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1) and Rule 32.2 of the Federal Rules of Criminal Procedure.

6       Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any person convicted of a violation of 18 U.S.C. § 1343 shall forfeit any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, from proceeds traceable to the commission of Counts One, Two, Three, and/or Four.

7.      Pursuant to 18 U.S.C. § 982(a)(1), any person convicted of a violation of 18 U.S.C. § 1957 shall forfeit any property involved in the respective offense, and any property traceable to such property, including, but not limited to those listed in Count Eleven for asset (c.) and Count Five and/or Count Nine for asset (l.).

## III. ARGUMENT

### A.    Forfeiture is Mandatory

If a defendant is convicted of an offense giving rise to forfeiture, the

applicable forfeiture statutes require that forfeiture be ordered as part of the sentence.  *See* 21 U.S.C. § 853(a) ("any person convicted of a violation . . . *shall* forfeit to the United States . . . ." (emphasis added)); *see also United States v. Taylor*, 582 F.3d 558, 565-66 (5th Cir. 2009) (citations omitted).  In addition to directly forfeitable property of specific assets, the Court can then order forfeiture by money judgment and substitute assets.  *See United States v. Olguin*, 643 F.3d 384, 396-97 (5th Cir. 2011) (because forfeiture statute is broadly worded and must be "liberally construed," a court must assume that any property of defendant may be forfeited unless specifically excluded from the scope of statute; because the statute does not exclude money judgments, a forfeiture order may take that form); *United States v. Hall*, 434 F.3d 42, 60 (1st Cir. 2006) (Rule 32.2(e) allows the government to move to forfeit substitute assets, but court must still order property forfeited).

### B. Burden of Proof

The forfeiture determination is part of the sentencing process.  *See Libretti v. United States*, 516 U.S. 29 (1995).  As with other sentencing issues, the burden of proof for determining forfeiture is by a preponderance of the evidence.  *See United States v. Gasanova*, 332 F.3d 297, 301 (5th Cir. 2003).  The rules of evidence also do not apply to sentencing proceedings.  *See United States v. Chavez*, 947 F.2d 742, 746 (5th Cir. 1991).  The Court may rely on "evidence already in the record,

including any written plea agreement, and or any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *see also United States v. Adegboye*, No. CR-11-30, 2011 WL 5025531, at *2 (W.D. Okla. Oct. 21, 2011) (noting that government did not present any additional evidence in the forfeiture phase of the trial but relied on documents already in evidence to establish the amount subject to forfeiture). Such information may include reliable hearsay; *see, e.g., United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007) (Rule 32.2(b)(1) allows the court to consider "evidence or information," making it clear that the court may consider hearsay; *United States v. Hatfield*, 795 F. Supp. 2d 219, 229-30 (E.D.N.Y. 2011) (because the Federal Rules of Evidence do not apply in the forfeiture phase of a criminal trial, the government does not have to satisfy the *Daubert* standard with respect to testimony of experts). Finally, the defendant may not relitigate legality of conduct in forfeiture phase. *See United States v. Warshak*, 631 F.3d 266, 331 (6th Cir. 2010) (in the forfeiture phase, the legality of the conduct is no longer a "live issue"; the only question is the nexus between the conduct and offense).

### C. Proceeds

Proceeds include property a defendant would not have obtained or retained but for the commission of the criminal offense. *See United States v. Sanders*, 952 F.3d 263, 286 (5th Cir. 2020) (where evidence established that fraud was

"pervasive" in company, even *de minimis* amounts of legitimately earned revenues in bank accounts forfeited as proceeds of healthcare fraud because revenues were traceable to fraud; court concluded that "fraud touched everything" and business "couldn't have existed absent the fraud"); *see also United States v. Lacerda*, 958 F.3d 196, 217 (3d Cir. 2020) (affirming forfeiture of all a business' proceeds when the court found that the business "was a fraudulent enterprise from beginning to end"). The government's burden is to show a nexus between the offense and the property, not to show exactly how each individual dollar in the accounts was fraudulently derived. *See Sanders*, 952 F.3d at 286. Courts are afforded discretion in calculating illicit gains based on the circumstances of the case. *See United States v. Treacy*, 639 F.3d 32, 47-48 (2d Cir. 2011) (explaining that the calculation of forfeiture "is not an exact science" and the district court's forfeiture calculations may "use general points of reference as a starting point for calculating the losses or gains from the [criminal activity] and may make reasonable extrapolations from the evidence"). Appreciation in the value of the property is also subject to forfeiture. *See, e.g., United States v. Betancourt*, 422 F.3d 240, 251 (5th Cir. 2005); *United States v. Vogel*, No. 4:08-CR224, 2010 WL 547344, at *4 (E.D. Tex. Feb. 10, 2010).

In addition, forfeitable proceeds encompass all the proceeds from the continuing fraudulent scheme. *United States v. Reed*, 908 F.3d 102, 125-26 (5th

Cir. 2018) (can forfeit all proceeds from continuing fraudulent scheme over 20

years, mail fraud, including those that fell outside 5 years statute of limitations);

*United States v. Cox*, 851 F.3d 113 (1st Cir. 2017) (forfeiture involving a fraud

scheme may include proceeds from uncharged related transactions as part of the

same scheme, even if jury acquitted defendant on count involving such

transaction); *United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016) (proceeds from

wire fraud necessarily include the fraudulent scheme as a whole, including any

additional executions of the scheme that were not specifically charged).

### D.  Supporting Evidence and Information to be Considered

Rule 32.2(b)(1)(B) makes clear that the forfeiture determination may be

based on evidence already in the record, or on "any additional evidence *or*

*information* submitted by the parties and accepted by the court as relevant and

reliable") (emphasis added); *compare* 18 U.S.C. § 3661 ("No limitation shall be

placed on the *information* concerning the background, character, and conduct of a

person convicted of an offense which a court of the United States may receive and

consider for the purpose of imposing an appropriate sentence") (emphasis added).

To support its forfeiture motion, the government requests that the Court

consider evidence already admitted in the record during the guilt phase of the trial,

including, the following bank records:  Trial Exhibits 99, 105, 106, 108, 110, 112,

113, 115, 117, 119, 121, 122, 127, 128, 131, 132, 134, 135, 136, and 139, in

addition to the trial testimony by Investigative Analyst Sarah Israel.  The government also requests that the Court consider the asset purchase documents exhibits already admitted into the record during the guilt phase of the trial, including Trial Exhibits 33, 41, 43, 47, 48, 50, 52, 55, 93, 136, 162.  Given that these records were admitted in the case-in-chief, these identified bank records and asset purchase documents are reliable evidence or information and admissible for consideration for forfeiture purposes under Rule 32.2(b)(1)(B).

In addition, the government requests that the Court consider the following exhibits that were not admitted at trial:  Trial Exhibit 125 (Mercedes-Benz McKinney purchase records), Expanded Trial Exhibit 115 (Bank Account Records for Chase Bank Account ending in 0392 from 07.2017 to 07.2022); Expanded Trial Exhibit 119 (Bank Account Records for Chase Bank Account ending in 8697 from 01.2019 to 09.2022); Expanded Trial Exhibit 122 (American Express Records for Credit Card ending in 1007 from 12.2019 to 02.2022); and Trial Exhibits 204 through 244 listed in Dkt. 86.  These exhibits are records produced in response to subpoenas or derived from the FBI's investigation, and reliable evidence for forfeiture purposes under Rule 32.2(b)(1)(B).  A copy of these exhibits will be provided to the Court and the defendant on a flash drive.

Finally, the government requests that the Court admit and consider the four Forfeiture Exhibits attached in the accompanying appendix filed with this motion.

Particularly, the government requests the admission and consideration of the FBI's

Forensic Accountant's declaration at Forfeiture Exhibit 1, Government's Appendix

("App'x") 1-21; and the incorporated Forfeiture Exhibit 2 (Trial Exhibit 200) at

App'x 22-38; Forfeiture Exhibit 3 (Trial Exhibit 201) at App'x 39-48; and

Forfeiture Exhibit 4 (Trial Exhibit 202[1]) at App'x 49-296.  Forfeiture Exhibit 2 and

3 show the flow and tracing of the fraudulent funds to the purchased assets, while

also considering any commingling of funds with "other funds."  As explained in

Israel's declaration, Forfeiture Exhibit 2 through 4 are based on her personal

knowledge and calculations following her review of voluminous bank records and

purchase documents.  Forfeiture Exhibit 4 is Israel's voluminous underlying data

that shows calculations summarized in Forfeiture Exhibit 1 through 3.  These

exhibits are reliable evidence or information and admissible for consideration for

forfeiture purposes under Rule 32.2(b)(1)(B).

### E.    Forfeiture of Specific Assets

Based upon Kirchner's conviction and the following evidence and

information from Israel's declaration and underlying documents she relied upon,

the government has established the requisite nexus between the property and the

violations charged in the superseding indictment for purposes of forfeiture for the

---

[1] Trial Exhibit 202 has been slightly updated since the version provided to defense in January 2024.  The updates did not change the LIBR calculations conclusions for the specific assets.

wire fraud convictions.  Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the government seeks forfeiture of the following assets as proceeds derived from violations of wire fraud, 18 U.S.C. § 1343, based on the wire fraud convictions at Count One, Two, Three, and/or Four.  Israel's declaration, supporting forfeiture exhibits, and underlying documents she relied upon established the requisite nexus between the property and the violations charged in the superseding indictment by tracing assets through the Lowest Intermediate Balance Rule, sanctioned by the Fifth Circuit.  *See United States v. Davis*, 53 F.4th 833, 848-849 (5th Cir. 2022) (auditor's tracing analysis that used LIBR "a process of addition and subtraction" was not expert testimony and the jury properly relied on that testimony); *United States v. Evans*, 892 F.3d 692, 708-710 (5th Cir. 2018) (adopting LIBR's clean- funds-out-first rule).

As summarized in Forfeiture Exhibit 2 at App'x 24, the following fraudulent-traced or "tainted" funds in these assets should be ordered forfeited as proceeds of the wire fraud:

| Asset Description (abbreviated) | Purchase Amount | Tainted Portion | Untainted Portion |
|---|---|---|---|
| Painting by Sarah Ashley Longshore | 17,234.25 | 17,234.25 | 0.00 |
| Four (4) bottles of Hundred Acre Ark wine | 8,500.00 | 5,166.15 | 3,333.85 |
| Cartier necklace | 20,784.00 | 12,632.15 | 8,151.85 |
| Richard Mille watch | 570,330.00 | 570,330.00 | 0.00 |
| 2021 Mercedes Benz | 283,277.78 | 271,258.09 | 12,019.69 |
| Two (2) bottles of Vineyard 7 and 8 Estate 2018 Cabernet Sauvignon | 786.25 | 454.28 | 331.97 |
| Eighteen (18) bottles of Lokoya 2016 Cabernet Sauvignon | 8,281.13 | 4,784.65 | 3,496.48 |
| Ladies' Rolex watch, Serial No. J0560855 | 52,839.00 | 52,839.00 | 0.00 |
| Men's Rolex watch, Serial No. Z071060 | 48,546.01 | 48,546.01 | 0.00 |
| 2022 Rolls Royce Cullinan | 234,551.48 | 116,785.85 | 117,765.63 |
| Men's Rolex watch, Serial No. 124741T1 | 45,394.64 | 43,052.76 | 2,341.88 |
| Thirty-three (33) bottles of Lokoya 2018 Cabernet Sauvignon | 16,968.20 | 16,968.20 | 0.00 |
| $500,000.82 seized from BOA1186 | | 500,000.00 | 0.82 |
| $39,501.76 seized from BOA5469 | | 39,501.76 | 0.00 |
| $32,292.90 seized from BOA5472 | | 32,292.90 | 0.00 |
| $3,508.99 from BOA3574 | | 3,508.99 | 0.00 |
| 1209 Perdenalas Trail, Westlake, Texas | 2,438,190.24 | 2,337,546.68 | 100,643.56 |

Accordingly, the "tainted portion" of the above-listed property is subject to forfeiture to the government as proceeds derived from wire fraud, pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. § 2461(c).[2]

In addition, the following asset is subject to forfeiture under 18 U.S.C. § 982(a)(1) because it is "involved in" money laundering from the money laundering conviction from Count Five and/or Count Nine:

The real property located at 1209 Perdenalas Trail, Westlake, Tarrant County, Texas.[3]

---

[2] Appreciation in the value of property is also subject to forfeiture. *See, e.g., United States v. Betancourt*, 422 F.3d 240, 251 (5th Cir. 2005); *United States v. Vogel*, No. 4:08-CR224, 2010 WL 547344, at *4 (E.D. Tex. Feb. 10, 2010).

[3] See Footnote 2 – appreciation in the value of the property is subject to forfeiture.

In addition, the following asset is subject to forfeiture under 18 U.S.C. § 982(a)(1) because it is "involved in" money laundering from the money laundering conviction at Count Eleven:

2021 Mercedes Benz AMG G63, VIN W1NYC7HJ9MX401228.

In the trial, Israel testified about the fraudulent funds that were traced to the purchase of these money laundering assets, and the defendant was convicted of this money laundering offense at Count Five, Nine, and Eleven.  Israel's declaration supports this conclusion.  Pursuant to 18 U.S.C. § 982(a)(1), property subject to the money laundering conviction is "involved in" that offense and subject to forfeiture. *United States v. Sanders*, 952 F.3d 263, 286-87 (5th Cir. 2020).  The entire asset is subject forfeiture as "involved in" money laundering – both the legitimate and illegitimate.  *See United States v. Tencer*, 107 F.3d 1120, 1135 (5th Cir. 1997); *United States v. Real Prop. Known as 1700 Duncanville Rd.*, 90 F. Supp. 2d 737, 741 (N.D. Tex. 2000), *aff'd*, 250 F.3d 738 (5th Cir. Feb.12, 2001) (Table) (where less than half of money used to buy real property was proceeds of food stamp fraud, property was forfeitable in its entirety because the purchase was a violation of section 1957).  Therefore, the government requests the Court to find these two identified assets subject to forfeiture as "involved in" the money laundering offenses.[4]

---

[4] Even if the legitimate portion of these two assets were not subject to forfeiture as involved in money

## F.  Forfeiture Money Judgment

The government also requests a forfeiture money judgment.  The amount of the money judgment is based on the offender's ill-gotten gains, whether spent or not.  *See United States v. Olguin*, 643 F.3d 384, 397 (5th Cir. 2011); *United States v. Nagin*, 810 F.3d 348, 353 (5th Cir. 2016).  The calculation may be based on reasonable extrapolations.  *See United States v. Prather*, 456 Fed. Appx. 622, 626 (8th Cir. Jan. 25, 2012).  To conserve judicial and party resources, the government requests a forfeiture money judgment that is significantly below the actual amount of fraud proceeds that the defendant obtained – but sufficient to cover the substitute assets currently available.[5]  Particularly, the government requests a forfeiture money judgment equal to the wire transfers for the purchase of the Gulfstream GV-SP (G550) private jet aircraft listed in the superseding indictment for which the defendant was convicted of money laundering.  The amount of those wire transfers total $16,131,500.  *See* Superseding Indictment at ¶ 40; App'x 21.

## G. Forfeiture of Substitute Assets

Rule 32.2(e)(1)(B) provides that on the government's motion, the Court may, at any time, enter an order of forfeiture to include substitute assets if the requirements of the applicable statute are met. The applicable statute in this case is

---

laundering, it would then be subject to forfeiture as a substitute asset.

[5] This request does not relate to or affect the government's position on restitution, loss amount, or any other calculation in this case.

21 U.S.C. § 853(p), which provides in relevant part:

(1) In general. Paragraph (2) of this subsection shall apply, if any property described in [21 U.S.C. § 853(a)], as a result of any act or omission of the defendant---

(A) cannot be located upon exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

(2) Substitute Property. In any case described in any subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

Under this statute, the government may forfeiture substitute assets valued up to the total value of the property subject to forfeiture under 21 U.S.C. § 853(a) that is not available for forfeiture for one or more of the Section 853(p)(1) factors. This means the government may forfeiture substitute assets up to the value of the forfeiture money judgment.

As demonstrated in the Israel declaration, Kirchner withdrew significant fraud proceeds during the time of the offenses and dissipated these funds to support his luxury lifestyle. App'x 21. Per Israel's declaration, aside from the specific assets sought for forfeiture addressed above, the government has been unable, upon

exercise of due diligence, to locate any additional directly forfeitable proceeds of Kirchner's offenses.  App'x 21.  The government has located substitute assets that were not directly traceable to the offenses, particularly the "untainted" portion of the previously identified assets sought for forfeiture as proceeds of the wire fraud and/or involved in the money laundering.  The government requests that the following assets be forfeited as substitute assets:

a. Up to $12,019.69 in equity of the 2021 Mercedes Benz AMG G63, VIN W1NYC7HJ9MX401228.
b. Up to $117,765.63 in equity of the 2022 Rolls Royce Cullinan, VIN SLATV4C05NU211445.
c. Up to $2,341.88 in equity of the Men's Rolex Oyster Cosmograph Dayton Watch, 18K Yellow Gold, Model 116508, Serial No. 124741T1.
d. Up to $8,151.85 in equity of the Cartier Panther-Style Pendant Necklace in 18K Yellow Gold, seized on February 14, 2023.
e. Bottles of wine as follows:
   * Up to $3,333.85 in equity of the Four (4) bottles of Hundred Acre Ark Wine
   * Up to $331.97 in equity of the Two (2) bottles of Vineyard 7 and 8 Estate 2018 Cabernet Sauvignon
   * Up to $3,496.48 in equity of the Eighteen (18) bottles of Lokoya 2016 Cabernet Sauvignon
f. Up to $100,643.56 in equity, plus appreciation, in the real property located at 1209 Perdenalas Trail, Westlake, Tarrant County,
g. $0.82 of the $500,000.82 seized from Bank of America Account No. XXXXXXXX1186, in the name of Alyssa Kirchner.
h. Audemars Piguet Automatic Chronograph Stainless Royal Oak Watch, Serial #K04977.
i. Ladies Rolex Oyster Perpetual Date Just Watch in Stainless, Model #178240, Serial  #538M19L0.
j. One 3 liter 2016 Cabernet Sauvignon from Vineyard 7 and 8 Estate.
k. One 1.5 liter 2013 Cabernet Sauvignon from Two Eight One.
l. $13,001.32 seized from Bank of America Account No. XXXXXXXX6744.

## IV. RELIEF

1.      In accordance with Fed. R. Crim. P. 32.2(b), if the court finds property is subject to forfeiture, a preliminary order of forfeiture directing the forfeiture of that property shall be promptly entered without regard to any third party's interest in all or part of the forfeited property.  A third party's interest is adjudicated in the ancillary proceeding under Rule 32.2(c).

2.      In accordance with Fed. R. Crim. P. 32.2(b)(3), the United States requests that it be permitted to undertake whatever discovery is necessary to identify, locate, or dispose of property subject to forfeiture and/or substitute property.

3.      After discovery of any additional substitute assets, the United States will move, pursuant to Fed. R. Crim. P. 32.2(e) for an amended order of criminal forfeiture for the specific substitute asset.  Upon entry of such an order, the United States will provide notice of the order allowing third parties who claim an interest in any such asset to petition the court for a hearing to adjudicate the validity of their interest in the asset, pursuant to 21 U.S.C. § 853.

4.      The United States requests that the court reference the forfeiture order at the time of sentencing and in its judgment against the defendant.  Fed. R. Crim. P. 32.2(b)(4)(B).

5.      Under Fed. R. Crim. P. 32.2(b)(3), once the order is entered the

Attorney General (or designee) is authorized to seize the property, conduct any discovery proper in identifying, locating, or disposing of the property subject to forfeiture, and commence proceedings that comply with any statutes governing third-party rights.

6.      In this case, the applicable statute governing third-party rights is 21 U.S.C. § 853(n).  The accompanying order highlights the various requirements of that provision and provides a roadmap for addressing any third-party petitions that may arise.

### V. CONCLUSION

Therefore, the  government asks the court to enter a preliminary order forfeiting the property to the government and ordering the United States Marshals Service (or its designee) to seize and maintain custody of the property and dispose of it in accordance with the law, subject to the provisions of 21 U.S.C. § 853(n).  A copy of the proposed order is attached to this filing and a Word version e-mailed to the Court. The proposed order identifies and categorizes the assets subject to forfeiture as proceeds of wire fraud, involved in or traceable to money laundering, and substitute assets.  The proposed order then provides for the forfeiture of the complete value for all of the assets based on all of the forfeiture theories.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY


*/s/ Dimitri N. Rocha*
DIMITRI N. ROCHA
Assistant United States Attorney
Florida Bar 693332
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8650
Facsimile: 214-659-8803
Email:  Dimitri.Rocha@usdoj.gov


## CERTIFICATE OF CONFERENCE

On March 8, 2024, the undersigned sent to counsel for the defendant, Christopher Weinbel, a draft copy of the motion for preliminary order of forfeiture and supporting exhibits.

Thereafter, Mr. Weinbel conferred with the defendant, and the defendant expressed to Mr. Weinbel that he is retaining new counsel.  Mr. Weinbel has indicated the following as the current position for defendant:

"While the defense does not agree to the forfeiture, it is, in candor, unable to lodge a valid objection other than the validity of the conviction itself."

*/s/ Dimitri N. Rocha*
DIMITRI N. ROCHA
Assistant United States Attorney